**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ILLINOIS**
**EAST ST. LOUIS DIVISION**

—————————————————————————————————————

| | | |
|---|---|---|
| **IN RE PRADAXA** | ) | **MDL No. 2385** |
| **(DABIGATRAN ETEXILATE)** | ) | **3:12-md-02385-DRH-SCW** |
| **PRODUCTS LIABILITY** | ) | **Judge David R. Herndon** |
| **LITIGATION** | ) | |

—————————————————————————————————————

**This Document Relates to:**

MARK A. JACKSON,
ON BEHALF OF HIMSELF AND
THOSE SIMILARLY SITUATED,

     Plaintiff,
v.
                       Case No. 3:12-cv-60004-DRH-SCW

BOEHRINGER INGELHEIM
PHARMACEUTICALS, INC.,
BOEHRINGER INGELHEIM PHARMA
GMHB & CO. KG, BOEHRINGER
INGELHEIM INTERNATIONAL
GMBH, BIDACHEM S.P.A.

     Defendants.

## ORDER

**Herndon, Chief Judge:**

## I. INTRODUCTION

     The above captioned action was filed by the plaintiff, Mark A. Jackson, a

citizen of Louisiana for injuries he allegedly suffered as a result of ingesting the

prescription drug Pradaxa (dabigatran etexilate). The plaintiff's claims are

directed against four defendants, Boehringer Ingelheim Pharmaceuticals, Inc.

("BIPI"), Boehringer Ingelheim International GmbH ("BII"), Boehringer Ingelheim

Pharma GmbH & Co. KG ("Pharma KG"), and Bidachem S.p.A. ("Bidachem"), Pending before the Court is a motion to dismiss (Doc. 6) under Federal Rule of Civil Procedure 12(b)(6), 12(b)(3) and 12(f) filed by BIPI.  The three remaining defendants are foreign entities that have not been served and do not appear or join this motion (Doc. 6-1 p. 4 n.6).

BIPI seeks dismissal of all Counts.  Specifically, BIPI argues, the Louisiana Products Liability Act ("LPLA") provides the exclusive remedy for the plaintiff's alleged injuries and the vast majority of the plaintiff's claims (Counts III - VI, VIII, and X - XIII) are not cognizable under the LPLA.  BIPI further contends that any remaining claims should be dismissed as inadequately pled under *Iqbal/Twombly* and federal/state law.  In the alternative, BIPI contends the case should be dismissed based on improper venue.  BIPI further argues that the plaintiff's purported class claims should be dismissed, under Rule 12(b)(6), or stricken, under Rule 12(f) (Doc. 6-1 p.2). Finally, BIPI seeks dismissal of any punitive/exemplary damages and/or requests for attorney's fees.

The plaintiff responds arguing that he has provided more than enough information to give BIPI fair notice of his claims and the grounds upon which they rest.  The plaintiff further contends the LPLA does not bar his claims because his complaint and all counts contained within that complaint satisfy the federal pleading requirements.  In the alternative, in the event the Court determines that any of the plaintiff's allegations are deficient, the plaintiff seeks leave to amend his complaint to correct any deficiencies.

2

## II. BACKGROUND

The plaintiff brings this action seeking damages for injuries allegedly suffered as a result of ingesting the prescription medication Pradaxa. The plaintiff's claims, thirteen in total, are directed against "Defendants" collectively. Three of the plaintiff's claims are brought under the Louisiana Products Liability Act ("LPLA") and sound in theories of negligence, strict liability, and warranty (Counts I, II, VII). The plaintiff's remaining claims are brought outside of the LPLA and are based on theories of redhibition (IX), negligence (Counts III, IV, XIII), warranty (Counts V, VI, VIII, X), fraud/misrepresentation (Count XI), and deceptive trade practices (XII). The plaintiff originally brought his complaint in the United States District Court for the Eastern District of Louisiana on the basis of diversity jurisdiction. The action was subsequently transferred to this Multidistrict Litigation.

BIPI, asserts the plaintiff's claims are subject to dismissal under Federal Rule of Civil Procedure 12(b)(6). BIPI alleges that most of the plaintiff's claims should be dismissed because they fall outside the LPLA which is the only avenue in Louisiana for bringing product liability claims against a manufacturer. The claims that do fall within the scope of the LPLA, BIPI contends, should also be dismissed because the plaintiff has failed to plead any unreasonably dangerous condition that proximately caused the plaintiff's alleged injuries. Additionally, BIPI asks this court to dismiss the plaintiff's overall complaint because of improper venue and to strike the class allegations put forth by the plaintiff.

### III.  PRELIMINARY MATTERS

**A. Venue**

In the alternative, BIPI has moved for this suit to be dismissed pursuant to Federal Rule of Civil Procedure 12(B)(3) for improper venue (Doc. 6-1 p. 24). Rule 12(B)(3) allows a party to move for dismissal of an action when it is not filed in the proper venue. When considering a motion to dismiss under Rule 12(b)(3), the plaintiff bears the burden of establishing proper venue. *See Bremen v. Zapata Off Shore Co.*, 407 U.S. 1, 18, 92 S.Ct. 1907, 32 L.Ed.2d 513 (1972); *Grantham v. Challenge–Cook Bros., Inc. et al.*, 420 F.2d 1182, 1184 (7th Cir.1969).

The Court must take all allegations in the complaint as true, draw all reasonable inferences in favor of the plaintiff, and may consider matters outside the complaint without converting the motion to one for summary judgment. *Faulkenberg v. CB Tax Franchise Sys., LP*, 637 F.3d 801, 809-812 (7th Cir. 2011).

The venue of all civil actions brought in district courts of the United States is governed by 28 U.S.C. § 1391. 28 U.S.C. § 1391(a).  Under 28 U.S.C. § 1391(b) venue is proper in:

> 1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located;
>
> (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or
>
> (3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any

4

defendant is subject to the court's personal jurisdiction with respect
to such action.

28 U.S.C. § 1391(b). Further, with regard to residency, 28 U.S.C. § 1391(c)

provides, in pertinent part, as follows:

> **(2)** an entity with the capacity to sue and be sued in its common
> name under applicable law, whether or not incorporated, shall be
> deemed to reside, if a defendant, in any judicial district in which
> such defendant is subject to the court's personal jurisdiction with
> respect to the civil action in question and, if a plaintiff, only in the
> judicial district in which it maintains its principal place of business;
> and

> **(3)** a defendant not resident in the United States may be sued in any
> judicial district, and the joinder of such a defendant shall be
> disregarded in determining where the action may be brought with
> respect to other defendants.

28 U.S.C. § 1391(c). Finally, with regard to the residency of corporations in states

with multiple districts, 28 U.S.C. § 1391(d) provides as follows:

> For purposes of venue under this chapter, in a State which has more
> than one judicial district and in which a defendant that is a
> corporation is subject to personal jurisdiction at the time an action is
> commenced, such corporation shall be deemed to reside in any
> district in that State within which its contacts would be sufficient to
> subject it to personal jurisdiction if that district were a separate
> State, and, if there is no such district, the corporation shall be
> deemed to reside in the district within which it has the most
> significant contacts.

28 U.S.C. § 1391(d).

The complaint states that venue is proper in the Eastern District of

Louisiana pursuant to 28 U.S.C. §1391(b)(1) because the plaintiff is a resident of

the state of Louisiana. As noted by BIPI, this is clearly wrong. Section 1391(b)(1)

provides that a civil action may be brought in "a judicial district in which any defendant resides" as long as "all defendants are residents of the State in which the district is located." Accordingly, the plaintiff's state of residence is irrelevant.

Additionally, the complaint states that venue is proper in the Eastern District of Louisiana "pursuant to 28 U.S.C. §1391 because a substantial part of the events giving rise to Plaintiff's claims occurred, in part, in the Eastern District of Louisiana" (Doc. 1 ¶ 9). BIPI contends that this assertion of venue is not sufficient because "the Complaint contains no facts to establish venue on this basis" (Doc. 6-1 p. 24). Specifically, BIPI states that the complaint contains "no facts stating where the Pradaxa allegedly was purchased or ingested, the name or location of Plaintiff's prescribing physician(s), the name or location of any medical facility where Plaintiff may have received treatment, or any other details that would indicate where a substantial part of the events in this case occurred" (Doc. 6-1 pp. 24-25).

While the complaint is devoid of the facts noted by BIPI, the complaint does assert that BIPI (and the three foreign defendants) have been and are doing business in the State of Louisiana and are subject to personal jurisdiction in the State of Louisiana. BIPI does not dispute this assertion. As BIPI is subject to personal jurisdiction in the State of Louisiana it is deemed to reside in any judicial district in Louisiana. *See* 28 U.S.C. § 1391(c) and (d). With regard to the foreign defendants, their joinder is disregarded for the purpose of determining venue as it relates to BIPI. 28 U.S.C. § 1391(c)(3). Finally, the Court notes that the

foreign defendants have not entered their appearance, joined in BIPI's motion to dismiss, or asserted any venue arguments. (venue is a personal defense and may not be raised by BIPI on behalf of the foreign defendants). *See Vance Trucking Co. v. Canal Ins. Co*., 338 F.2d 943, 944 (4th Cir.1964) (*citing Camp v. Gress*, 250 U.S. 308, 39 S.Ct. 478, 63 L.Ed. 997 (1919)). *See also Id.* ("Venue is a doctrine of convenience and is not jurisdictional, and since the protesting parties are not inconvenienced by [the joined defendant's] nonresidence, they cannot complain that the requirements of the venue statute are not satisfied as to him.").

Considering the above, the Court finds that the complaint contains sufficient allegations for establishing that venue is proper in the Eastern District of Louisiana.[1]

## B. Class Allegations

Before addressing the individual claims at issue here, the court will address the purported class allegations and BIPI's motion to strike or dismiss the same. BIPI contends that the class allegations contain a mere formulaic recitation and, as a result, must be dismissed under Rule 12(b)(6) and the *Iqbal/Twombly* pleading standard. In the alternative, BIPI contends that the class allegations should be stricken under Rule 12(f) because it is facially apparent from the pleadings that there is no ascertainable class. The plaintiff has not sought to certify the purported class, contends that consideration of the class allegations is

---

[1] This case was transferred here for inclusion in this multidistrict litigation for pretrial purposes. Thus, the venue analysis properly considers whether venue is proper in the Eastern District of Louisiana – the venue where the action originated.

premature, and has asked the Court to allow additional time to brief class related issues.

Under other circumstances, the Court might agree with the plaintiff and find that BIPI's motion, with regard to the class allegations, is premature. In the instant case, however, the class allegations are so woefully deficient that dismissal is required under Rule 12(b)(6) and the *Iqbal/Twombly* pleading standard. The plaintiff's class allegations amount to nothing more than a mere recital of the elements in Rule 23 in relation to an unidentified class.[2] Accordingly, the Court is dismissing the plaintiff's class allegations without prejudice. The Court will grant leave to amend the complaint. However, the Court notes that, given the nature of this case, it is highly unlikely that a statewide class governed by the law of Louisiana could meet the requirements of Rule 23(b)(3). *See e.g., Brandner v. Abbott Laboratories, Inc.* 2012 WL 195540, 2 (E.D. La. Jan. 23, 2012). Moreover, a nationwide class, governed by the laws of all 50 states is likely unmanageable. *See In re Bridgestone/Firestone, Inc.*, 288 F.3d 1012, 1015 (7th Cir. 2002).

## IV. APPLICABLE LEGAL STANDARDS

**A. Federal Law**

Under the *Erie* doctrine, federal courts sitting in diversity apply state substantive law and federal procedural law. *Erie R.R. Co. v. Tompkins*, 304 U.S.

---

[2] The purported class is presently represented by the plaintiff and defined as "those similarly situated."

64, 78, 58 S.Ct. 817, 82 L.Ed. 1188 (1938).  With regard to federal law, the Court must determine whether it is governed by the law of the Seventh Circuit or the law of the transferor forum.  Although the Seventh Circuit has yet to decide which law governs federal claims in cases transferred under 28 U.S.C. § 1407, it has adopted the rationale of *Korean Air* when resolving the question under 28 U.S.C. § 1404(a), which authorizes district courts to transfer cases for reasons of convenience. *See McMasters v. U.S*., 260 F.3d 814, 819 (7th Cir. 2001) *Eckstein v. Balcor Film Investors*, 8 F.3d 1121, 1126 (7th Cir. 1993), *cert. denied*, 510 U.S. 1073, 114 S.Ct. 883, 127 L.Ed.2d 78 (1994).   Under the *Korean Air* rationale, when an action is transferred under § 1404(a), a transferee court is "free to decide [federal claims] in the manner it views as correct without deferring to the interpretation of the transferor circuit." *McMasters v. U.S.,* 260 F.3d at 819 (*quoting Korean Air*, 829 F.2d at 1174).  The law of the transferor forum is only applied when the applicable federal law is intended to be geographically non-uniform. *Eckstein*, 8 F.3d at 1127. Considering the foregoing cases, this Court holds that Seventh Circuit law applies to questions of federal law in the instant case.

**B. Louisiana Law Governs the Plaintiff's Claims**

The Court must also determine which state's substantive law governs.  BIPI expressly contends that the substantive law of Louisiana governs (Doc. 6-1 p. 8). In his memoranda in opposition to BIPI's motion, the plaintiff addresses his claims in terms of Louisiana law, and thus implicitly agrees that

the substantive law of Louisiana applies.  In addition, the Court notes that there is a significant relation between Louisiana and the subject dispute: Louisiana is the state where the plaintiff resided when he was prescribed Pradaxa, when he ingested Pradaxa, and when he was allegedly injured by Pradaxa.  Because the parties are in agreement regarding the application of Louisiana law and there is a reasonable relation between Louisiana and the subject dispute, the Court will apply the substantive law of Louisiana. *See Home Valu, Inc. v. Pep Boys*, 213 F.3d 960, 963 (7th Cir. 2000) (*citing Harter v. Iowa Grain Co.*, 211 F.3d 338, 352–53 n. 12 (7th Cir. 2000) ("[W]e forego choice of law analysis when the parties agree on the law that governs a dispute and there is a reasonable relation between the dispute and the forum whose law has been selected.")).

## C. Dismissal Under Rule 12(b)(6) - Standard of Review

The purpose of a Rule 12(b) motion to dismiss is not to decide the merits of the case.  A Rule 12(b)(6) motion tests the sufficiency of the complaint. *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990).  In reviewing a motion to dismiss under Rule 12(b)(6), the Court takes as true all factual allegations in plaintiff's complaint and draws all reasonable inferences in his favor. *Killingsworth v. HSBC Bank Nevada, N.A.*, 507 F.3d 614, 618 (7th Cir. 2007); Long, 182 F.3d at 554.

To survive a Rule 12(b)(6) motion to dismiss, the claim first must comply with Rule 8(a) by providing "a short and plain statement of the claim showing that

the pleader is entitled to relief" (Fed.R.Civ.P.8(a)(2)), such that the defendant is given "fair notice of what the * * * claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007) (*quoting Conley v. Gibson*, 355 U.S. 41, 47, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)).  Second, the factual allegations in the claim must be sufficient to raise the possibility of relief above the "speculative level," assuming that all of the allegations in the complaint are true. *E.E.O.C. v. Concentra Health Servs., Inc.*, 496 F.3d 773, 776 (7th Cir.2007) (*quoting Twombly*, 550 U.S. at 555). "Detailed factual allegations" are not required, but the plaintiff must allege facts that, when "accepted as true, * * * 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) (*quoting Twombly*, 550 U.S. at 555). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id.  "[O]nce a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." *Twombly*, 550 U.S. at 563.

## V. ANALYSIS

### A. Applicability of the Louisiana Products Liability Act

#### 1.  Exclusivity of the LPLA

The LPLA provides "the exclusive theories of liability for manufacturers for damage caused by their products."  La. Rev. Stat. Ann. § 9:2800.52.  "A claimant may not recover from a *manufacturer* for damage caused by a product on the basis of any theory of liability that is not set forth in [the LPLA]." *Id.* (emphasis

11

added).  *See also Stahl v. Novartis Pharms. Corp.*, 283 F.3d 354, 261 (5th Cir. 2002) (non-LPLA causes of action are not available against the manufacturer of a product for damages caused by that product).

The only exception to LPLA exclusivity is for redhibition claims for economic loss.  *See Touro Infirmary v. Sizeler Architects*, 947 So.2d 740, 744 (La. App. 2006) ("the LPLA subsumes all possible causes of action [against a manufacturer] with the exception of redhibition"); *De Atley v. Victoria's Secret Catalogue, LLC*, 876 So.2d 112, 115 (La. App. 2004) (Louisiana courts have interpreted the LPLA as preserving a plaintiff's claim of redhibition as a cause of action only to the extent that the claimant seeks to recover the value of the product or other economic loss).

### 2.  The LPLA Applies Only to Manufacturers

The LPLA applies only to manufacturers and does not govern claims against non-manufacturing sellers. *See* La. Rev. Stat. 9.2800.53.  A manufacturer is defined as "a person or entity who is in the business of manufacturing a product for placement into trade or commerce." *Id.* § 2.800.53(1).  Pursuant to the LPLA, "manufacturing a product" means "producing, making, fabricating, constructing, designing, remanufacturing, reconditioning or refurbishing a product." *Id.*

A seller, by contrast, is defined as one "who is not a manufacturer and who is in the business of conveying title to or possession of a product to another

person or entity in exchange for anything of value." *Id.* Because the LPLA does not apply to non-manufacturing sellers, seller liability is judged according to the pre-LPLA standard – in essence a negligence standard. *See Slaid v. Evergreen Indem., Ltd., 32,363,* 745 So. 2d 793, 797 (La. App. Ct. 1999) (non-manufacturing seller is liable for damages caused by a product he sold "if he knew or should have known that the product sold was defective, and failed to declare it.").

Under certain circumstances, a seller can also be a manufacturer under the LPLA. *See* La. Rev. Stat. § 9:2800.53(1)(a)-(d). First, a seller "who labels a product as his own or who otherwise holds himself out to be the manufacturer of the product" is a manufacturer. *Id.* § 53(a)(a). Second, a seller is a manufacturer if he is in the business of importing or distributing "the product of an alien manufacturer" for resale and "the seller is the alter ego of the alien manufacturer." *Id.* § 53(1)(d). A product of an alien manufacturer is "a product that is manufactured outside the United States by a manufacturer who is a citizen of another country or who is organized under the laws of another country." *Id.*

### 3.  The LPLA Governs the Plaintiff's Claims Against the Defendants

In light of the legal principles discussed above, the plaintiff's non-LPLA claims sounding in negligence (Counts III, IV, XIII), warranty (Counts V, VI, VIII, X), fraud/misrepresentation (Count XI), and deceptive trade practices (XII) are

precluded by the LPLA to the extent that the defendants are manufacturers of Pradaxa as that term is defined in the LPLA.

In the instant case, the plaintiff alleges that the "Defendants[3]…designed, manufactured, marketed, advertised, distributed, promoted, labeled, tested *and* sold Pradaxa" (Doc. 1 ¶ 10) (emphasis added).[4] *See also* (Doc. 1 p. 1) (defining Pradaxa as "a prescription medication used as a blood thinner, which at all times relevant hereto, was manufactured, designed, tested, packaged, labeled, marketed, advertised, distributed, *and* sold by Defendants Boehringer Ingelheim Pharmaceuticals, Inc., Boehringer Ingelheim Pharma GmbH & Co. KG, Boehringer Ingelheim International GmbH, and Bidachem S.p.A.") (emphasis added).

Considering only the allegations in the plaintiff's complaint, as is appropriate at this stage of the litigation, the non-LPLA claims are precluded and must be dismissed. The plaintiff alleges that his injuries are the fault of the defendants as the alleged manufacturers Pradaxa. Accordingly, the LPLA controls. The LPLA's exclusivity provision bars all of the plaintiff's claims beyond the scope of the LPLA except for any claim that the plaintiff may have in redhibition for economic loss only.

---

[3]  Defined as Boehringer Ingelheim Pharmaceuticals, Inc., Boehringer Ingelheim Pharma GmbH & Co. KG, Boehringer Ingelheim International GmbH, and Bidachem S.p.A. (Doc. 1 p. 1).
[4]  Significantly, the plaintiff does not plead in the alternative that the defendants are either manufacturers *or* sellers of Pradaxa.

Therefore, BIPI's motion to dismiss the non-LPLA claims sounding in negligence (Counts III, IV, XIII), warranty (Counts V, VI, VIII, X), fraud/misrepresentation (Count XI), and deceptive trade practices (XII) is **GRANTED**. These claims are dismissed without prejudice, with leave to amend, should discovery reveal that the named defendants are non-manufacturing defendants.

**B. Sufficiency of the LPLA Claims**

Three of the plaintiff's claims are cognizable under the LPLA: Count I (Failure to Warn); Count II (combining claims alleging Design Defect, Marketing Defect, Construction or Composition Defect and Manufacturing Defect); and Count VII (Breach of Express Warranty).

BIPI argues that the plaintiff has failed to sufficiently allege any claim under the LPLA. The Court, finds that the factual allegations in the plaintiff's complaint are sufficient to state a claim under the LPLA for failure to warn (Count I) and for design/marketing defect (Count II). The plaintiff, however, has failed to allege facts sufficient to state a claim under the LPLA for breach of express warranty.

**1. Requirements for Stating a Claim Under the LPLA**

To state a claim under the LPLA, a plaintiff must establish: "damage proximately caused by a characteristic of the product that renders the product unreasonably dangerous when such damage arose from a reasonably anticipated use of the product by the claimant or another person or entity." La. R.S.

15

9:2800.54A. The product is unreasonably dangerous if, and only if, the product is (1) unreasonably dangerous in construction, 92) unreasonably dangerous in design, (3) unreasonably dangerous due to an inadequate warning, or (4) unreasonably dangerous because it does not conform to an express warranty. La. R.S. 9:2800.54B. Stated differently, to state a cause of action under the LPLA, the plaintiff must allege as follows:

> 1. that the defendant is a manufacturer of the product;
>
> 2. that the claimant's damage was proximately caused by a characteristic of the product;
>
> 3. that the characteristic made the product unreasonably dangerous in one of the four ways provided in the statute; and
>
> 4. that the claimant's damage arose from a reasonably anticipated use of the product by the claimant or someone else.

*Jefferson* v. *Lead Industries Ass'n, Inc.*, 106 F.3d 1245, 1251 (5th Cir. 1997).

### 2. Count 1 (Failure to Warn) and Count 2 (Design and Marketing Defects)

The plaintiff contends that Pradaxa is defective and unreasonably dangerous in design as well as unreasonably dangerous due to an inadequate warning. As discussed above, the plaintiff contends that the defendants manufactured Pradaxa. The plaintiff further contends that he was prescribed Pradaxa and as a result suffered mental and physical injuries.

The plaintiff goes on to allege that the defendants failed to provide timely and adequate warnings to physicians, pharmacies, and consumers, including the plaintiff and the plaintiff's prescribing physician. Specifically, the plaintiff alleges

that the defendants failed to include *adequate* warnings and/or *adequate* clinical data regarding the risk of irreversible and/or uncontrollable bleeds, the lack of a reversal agent, and how to intervene and stabilize a patient should a bleed occur (Doc. 1 ¶¶ 32-38, 41, 57, 59).

The plaintiff further contends that Pradaxa was defective because its levels in the blood are difficult or impossible to assess and bleeds cannot be stopped since there is no known reversal agent (Doc. 1 ¶ 29). The plaintiff claims that these defects place patients at an increased risk for developing life-threatening bleeds (Doc. 1 ¶ 29).

The plaintiff further alleges that the Pradaxa administered to him was defective in design and formulation because the benefits of taking the drug did not outweigh the serious and "undisclosed" risks of its use. (Doc. 1, p. 21, ¶72-73). Additionally, the plaintiff alleges that the "one size fits all" dosage of Pradaxa is unreasonably dangerous, there are no patients for whom the benefits of Pradaxa outweigh the risks of ingesting it, and there were safer alternatives, such as Warfarin, that did not carry the same risks and dangers as Pradaxa. *Id*.  Finally, the plaintiff claims that as a direct and proximate result of the design, marketing, and manufacturing defects of Pradaxa, he suffered serious and permanent injury. (Doc. 1, p. 21, ¶80-82). These allegations combined with other allegations contained in Counts I and II of the complaint are sufficient to survive BIPI's motion to dismiss.

The Court notes BIPI's assertions regarding data that was contained in Pradaxa's label regarding the risk of bleeding and accidental overdose as well as the data pertaining to the lack of a reversal agent. However, the fact that the Pradaxa label contained some information pertaining to a risk of bleeding and/or referenced the lack of a reversal agent does not establish that the warnings and information contained in the Pradaxa label were adequate and does not warrant dismissal at this stage in the litigation.

For the reasons discussed above, the motion to dismiss as to Counts I and II is **DENIED.**

### 3.  Count VII (Express Warranty)

The plaintiff alleges that Pradaxa is unreasonably dangerous due to non-conformance to an express warranty. The plaintiff asserts that the defendants "researched, developed, designed, tested, manufactured, inspected, labeled, distributed, marketed, promoted, sold, and/or otherwise released into the stream of commerce Pradaxa, in the course of the same, directly advertised or marketed the product to the FDA, health care professionals and consumers, including Plaintiff, or persons responsible for consumer" (Doc. 1 ¶ 118). The plaintiff further alleges that Pradaxa "materially failed to conform to those representations made by Defendants in package inserts, and otherwise, concerning the properties and effects of Pradaxa" (Doc. 1 ¶ 119). The plaintiff, however, fails to identify "those representations" made by the defendants. In other words, the plaintiff has

not identified any express warranty made by the defendants that could be the basis for the plaintiff's breach of express warranty claim. Because the plaintiff fails to specify any representation or statement of alleged fact or promise about Pradaxa that could form the basis of an express warranty claim, the claim fails the *Iqbal/Twombly* pleading standard.

Accordingly, the motion to dismiss as to Count VII is **GRANTED.** The dismissal is without prejudice and the plaintiff is granted leave to amend.

**C. Count IX Redhibition Claim**

Under the LPLA, a claim for redhibition provides that "[t]he seller warrants the buyer against redhibitory defects, or vices, in the thing sold." La. Civ. C. Art. 2520.

> A defect is redhibitory when it renders the thing useless, or its use so inconvenient that it must be presumed that a buyer would not have bought the thing had he known of the defect.  The existence of such defect gives a buyer the right to obtain rescission of the sale.
>
> A defect us redhibitory also when, without rendering the thing totally useless, it diminishes its usefulness or its value so that it must be presumed that a buyer would still have bought it but for a lesser price.  The existence of such a defect limits the right of a buyer to a reduction of the price.

La. Civ. C. Art. 2520

The LPLA allows for a redhibition claim only to the extent that the plaintiff seeks recovery of economic losses. Here, the    plaintiff    alleges    that Pradaxa    contains    a    vice    or    defect    which    renders    the    product    useless    or

unreasonably dangerous. (Doc. 1, p. 32-33, ¶127-30).  Accordingly, the plaintiff claims he is entitled to a "rescission of the sale of the subject product" or "a reduction in the purchase price," as well as attorney's fees. (Doc. 1, p. 32-33, ¶128-30).

BIPI argues that Pradaxa does not contain a vice or defect and that the drug performed exactly as it was supposed to. (Doc. 6-1, p. 18).  Furthermore, BIPI alleges that the plaintiff's complaint "otherwise contains no sufficient factual allegation of a discernible economic loss that could sustain a claim for redhibition." (Doc. 6-1, p. 18). Having already deemed Counts I and II of the plaintiff's complaint as sufficiently stating a claim under the LPLA, this Court also rejects BIPI's argument relating to redhibition and finds that plaintiff's redhibition claim should be preserved for further proceedings.

Accordingly, BIPI's motion to dismiss is **DENIED** as to the plaintiff's redhibition claim (Count IX).

### D.  Request for Exemplary and/or Attorney's Fees Damages

To the extent that the plaintiff requests exemplary/punitive damages for the LPLA claims that have not been dismissed (Doc. 1 ¶154(C) and attorney's fees for the same (Doc. 1 p. 40), such request must be dismissed. Louisiana law does not permit exemplary/punitive damages, except where expressly authorized by statute. *See International Harvester Credit v. Seale*, 518 So.2d 1039 (La. 1988). The LPLA does not provide for recovery of punitive damages or attorney's fees. *See*

20

*International Harvester Credit v. Seale*, 518 So.2d 1039 (La. 1988); *Bladen v. C.B. Fleet Holding Co.*, 487 F. Supp. 2d 759 (W.D. La. 2007); La. R.S. § 9:2800.53(5) (expressly providing that attorney's fees are not recoverable).

Therefore, the motion to dismiss is **GRANTED** insofar as it seeks dismissal of the plaintiff's request for punitive/exemplary damages and/or attorney's fees in relation to the non-dismissed LPLA claims.

Likewise, exemplary/punitive damages are not recoverable under Louisiana redhibition law. Accordingly, the motion to dismiss is **GRANTED** to the extent that it seeks dismissal of the plaintiff's requests for exemplary/punitive damages in relation to the redhibition claim.

It appears that attorney's fees are recoverable under the redhibition articles, only "insofar as those fees relate to the recovery of purely economic loss"). *DeAtley v. Victoria's Secret Catalogue*, *L.L.C.*, 876 So. 2d 112, 115 (La. App. 2004). Accordingly, the motion to dismiss is **DENIED** to the extent that it seeks dismissal of the plaintiff's request for attorney's fees for the redhibition claim in relation to purely economic loss.

## V. CONCLUSION

In light of the legal principles discussed above, the Court **ORDERS** as follows:

The plaintiff's non-LPLA claims sounding in negligence (Counts III, IV, XIII), warranty (Counts V, VI, VIII, X), fraud/misrepresentation (Count XI), and

deceptive trade practices (XII) are **DISMISSED** without prejudice, with leave to refile, should facts reveal that the defendants are non-manufacturing defendants.

The plaintiff's LPLA claim for breach of express warranty (Count VII) is **DISMISSED** without prejudice, with leave to refile.

The plaintiff's class allegations are **DISMISSED** without prejudice, with leave to refile.

The motion to dismiss is **DENIED** to the extent that it seeks dismissal of the plaintiff's LPLA claims for failure to warn (Count I) and design or marketing defects (Count II)**.**

The motion to dismiss is **DENIED** to the extent that it seeks dismissal of plaintiff's redhibition claim (Count IX)**.**

The motion to dismiss is **GRANTED** to the extent that it seeks dismissal of any request for punitive/exemplary damages and/or attorney's fees in relation to the non-dismissed LPLA claims. Any such requests are **DISMISSED WITH PREJUDICE.**

The motion to dismiss is **GRANTED** to the extent that it seeks dismissal of any request for punitive/exemplary damages in relation to the redhibition claim, Any such requests are **DISMISSED WITH PREJUDICE.**

The motion to dismiss is **DENIED** to the extent that it seeks dismissal of any request for attorney's fees, for purely economic loss, in relation to the plaintiff's redhibition claim.

**IT IS SO ORDERED.**

Digitally signed by
David R. Herndon
Date: 2013.07.18
17:09:17 -05'00'

**Chief Judge**                                              **Date: July 18, 2013**
**United States District Court**

23